**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: 09-09094-dd

ORDER GRANTING MOTION TO CONVERT CASE

The relief set forth on the following pages, for a total of 10 pages including this page, is hereby **ORDERED**.

**FILED BY THE COURT**
**04/29/2010**



US Bankruptcy Court Judge
District of South Carolina

Entered: 04/29/2010

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

In re:

Albert J. Sanders, Jr.

           Debtor.

Case No. 09-09094-dd

Chapter 11

## ORDER GRANTING MOTION TO CONVERT CASE

This matter came before the Court on the motion of the United States Trustee (UST) for entry of an order converting this case to one under chapter 7 pursuant to 11 U.S.C. § 1112(b)(1) and (4)(A, B, C, F and H), 28 U.S.C. § 586, and 11 U.S.C. § 307 (the "Motion"). This is a core proceeding and this Court has jurisdiction to determine this matter pursuant to 28 U.S.C. § 157(b)(2) and Local Civil Rule 83.x.01, DSC. The debtor objected to the Motion and hearings were held on March 30, 2010 and April 19, 2010. Based on the arguments and pleadings of counsel and the evidence submitted to the Court, the Court makes the following findings of fact and conclusions of law:

<u>Findings of Fact</u>

At the hearings on March 30, 2010 and April 19, 2010, Julie Smoak, a bankruptcy analyst with the United States Trustee's Office, and Albert J. Sanders, Jr. were called as witnesses and testified in this matter.

The debtor filed for relief under chapter 11 of the Bankruptcy Code on December 4, 2009. The debtor was a pro se debtor at the time of the petition. The debtor has remained in possession since filing. On February 18, 2010, Reid Smith was approved as debtor's counsel in this matter.

When the debtor filed his bankruptcy petition on December 4, 2009, the bankruptcy

schedules and statements were not filed. The debtor's bankruptcy schedules and statements were filed on December 18, 2009..

On January 5, 2010, the Court held a status hearing and the debtor was required to pay remaining filing fees within 10 days. The debtor complied with this requirement. The Court encouraged the debtor to obtain counsel and generally inquired as to debtor's business and financial affairs.

On January 5, 2010, the UST had an initial debtor interview (IDI) with the debtor. Mrs. Smoak testified that at an IDI, the administrative requirements of a chapter 11 case are explained to debtors and any deficiencies in the schedules and statements are discussed. Mrs. Smoak testified that the notes from the IDI for this debtor indicated that numerous deficiencies in the schedules and statements were discussed and the debtor was instructed to correct the majority of the deficiencies by the first meeting of creditors to be held on January 11, 2010.

On January 11, 2010, the debtor had not amended the schedules and statements and requested a continuance of the first meeting of creditors to allow him an opportunity to retain counsel. The first meeting of creditors was continued to January 27, 2010.

At the continued first meeting of creditors, the debtor still had not retained counsel. The first meeting of creditors was conducted. Mrs. Smoak testified she was present at the continued first meeting of creditors and that the debtor was instructed to amend his schedules and statements within 10 days of the continued first meeting of creditors. Some of the deficiencies noted were: (1) the bankruptcy petition improperly reflected the case as a single asset real estate case; (2) the debtor did not declare any exemptions; (3) business entities owned by the debtor needed to be added to Schedule B; (4) a breakdown of the business income and expenses needed to be attached to the schedules; (5) executory contracts and unexpired leases needed to be

disclosed on schedule G; (6) questions 1 - 3 of the statement of financial affairs needed to be completed; (7) relatives staying in rental houses rent free needed to be disclosed; (8) transfers of money or payments on behalf of the mother of the debtor's son needed to be disclosed; (9) foreclosures needed to be listed on the statement of financial affairs, and (10) any other omission or error needed to be corrected.  Amended schedules and statements had not been filed at the time of the March 30, 2010 hearing.

According to Mrs. Smoak, the debtor was also reminded at the continued first meeting of his administrative duties which include the filing of monthly operating reports and the payment of quarterly fees.  At the time of the March 30, 2010 hearing, the debtor had failed to file any monthly operating reports.  The debtor had remitted $325 as a quarterly fee for the fourth quarter of 2009, but Mrs. Smoak testified that without the monthly operating report there is no way to verify the sufficiency of the amount remitted, as the proper fee is determined based on disbursement of funds.

At the hearing on March 30, 2010, Mrs. Smoak testified that she had reviewed the Lexington County South Carolina real property records, the records from the South Carolina Secretary of State's Office and the public index for Lexington County.  She testified that the Lexington County real property records reflected that the debtor had listed real property on schedule A that was not titled in his name individually, that he had omitted at least one real property that was titled in his name individually, and that there had been multiple transfers of real property in the two years before the bankruptcy petition to entities for which the debtor appeared as the registered agent.  The transfers were not listed on the schedules and statements.  The Secretary of State's Office indicated the debtor was the registered agent for approximately 20 companies, none of which were listed on Schedule B.  Mrs. Smoak also stated that the debtor

testified at the first meeting of creditors that he had no ownership interest in the companies and they were all companies owned by his ex-wife or mother[1].

Mrs. Smoak testified that in reviewing the real property records she discovered documents the debtor had signed in which he purported to be the owner of the companies in which he now denied having an ownership interest. Mrs. Smoak stated that the real property records also showed a transfer of property from South Carolina Homes & Land, LLC[2] to Angie Stokes on December 30, 2009, after the bankruptcy was filed.

Mrs. Smoak testified that the public index for Lexington County indicated a lawsuit was pending between the debtor and the Town of Gilbert. The lawsuit was not listed on the schedules and statements and the real property that was subject to the lawsuit had been transferred to A&J Electrical Services, LLC on February 10, 2009.

The debtor acknowledged in his testimony on March 30, 2010, that he had several rental properties in which relatives were living and had not been paying rent. He had testified at the first meeting of creditors that the relatives would begin paying rent in February but that had not occurred at the time of the March 30 hearing.

The debtor stated he has a seventh grade education and that in his 34 years of marriage his ex-spouse handled all financial matters. He testified that his financial troubles resulted from his difficulties in sorting out how to manage the various properties following his divorce.

The debtor acknowledged that he did not have insurance on the majority of the properties and was relying on force placed insurance by the secured creditors.

---

[1] The UST also played a portion of the recording from the first meeting of creditors in which the debtor testified that he has no ownership interest in the companies.

[2] South Carolina Homes & Land, LLC is one of the businesses to whom the debtor had transferred real property in the last two years.

The debtor was unable to state how much money had been collected from the rental properties since the bankruptcy filing. The debtor was also unable to answer how much the rental income from the properties was on a monthly basis.

The Court finds that the debtor is not financially sophisticated and does not appear capable of managing his properties. The debtor testified that his mother paid the money to his attorney to assist in the bankruptcy as he did not have the funds to do so. The debtor was unable to state how he would pay for an accountant to assist him.

At the March 30, 2010 hearing, the Court found the UST had met his burden of demonstrating cause for the conversion of this case. However, the Court continued the hearing to April 19, 2010 to allow the debtor until April 5, 2010 to cure all deficiencies.

At 4:41 pm on April 5, 2010, the debtor filed his outstanding monthly operating reports, and at 9:28 pm on April 5, 2010, the amended schedules and statements were filed.

The debtor agrees that thereafter, at 8:44 am on April 6, 2010, the UST requested copies of all checks received since the filing of the bankruptcy petition, copies of all checks written by the debtor since the filing of the bankruptcy petition, an identification of the property sold post-petition (because the debtor had checked a box in the monthly reports indicating that property had been sold), and an identification of what pre-petition debts were paid post-petition (again because the debtor had checked a box on the monthly operating reports indicating the payment of pre-petition debts). Mrs. Smoak testified that the UST renewed these requests for information on April 12, 2010 and April 14, 2010. At 7:34 pm on April 14, 2010, emails containing the requested copies of checks were forwarded. Additional bank statements from businesses which the debtor acknowledged he owned were sent on April 16. On April 18, the budget was sent to the UST.

The UST argued that the filing on April 5, 2010 was insufficient to meet the Court's deadline to cure deficiencies because the information was incomplete and that the information provided raised additional questions.

The checks received by the debtor post-petition were admitted into evidence by stipulation of the parties. The checks disclosed two additional businesses (i.e., Manchester Properties, LLC and Cimmaron MHP Rentals, LLC) which the debtor testified were owned by his ex-wife. Manchester Properties, LLC was the entity to whom four rental checks regarding the debtor's rental property were made payable. The majority of the rental checks were made payable to AJS Rental Properties which the debtor also did not mention on the amended schedules and statements. The checks received by debtor included checks issued by the South Carolina Housing Finance and Development Authority. However, the debtor has never amended schedule G to reflect any unexpired leases or executory contracts with the State or with other entities.

The debtor's budget included income from rental units for which the debtor acknowledged he had not received any rent payments post-petition or for which the rent payment was made directly to the mortgage holder and therefore was not available to pay budgeted expenses.

Mrs. Smoak testified at the hearing on April 19, 2010 that many deficiencies remained on the schedules and statements including the failure to amend schedule I and J to provide detailed information on income and expenses and the failure to amend schedule G to add unexpired leases and executory contracts. Mrs. Smoak also testified that the monthly operating reports were deficient as filed as they failed to provide sufficient detail of the debtor's income and expenses.

The debtor acknowledged in his testimony that the monthly operating reports covered the period of the first of the month through the end of the month but the bank statements attached to the February monthly operating report covered the period of February 23 through March 23. In other words, the documentation of income and expenses does not match the proper reporting period.

It was not clear from the debtor's testimony what income was due to him as opposed to income that was due to companies owned by his ex-wife, mother, or other entities. The debtor also did not adequately demonstrate what income was available to fund the bankruptcy case, his reasons for failing to cure all deficiencies on the schedules and statements, the reason the monthly operating reports did not include adequate information or even information that corresponded to the correct period covered by the monthly operating report, or how the debtor would be able to manage the requirements of a debtor in a chapter 11 bankruptcy case.

Mrs. Smoak testified at the March 30 hearing that at least one secured creditor had filed a statement that it did not consent to the use of its cash collateral. At the time of the hearing on April 19, 2010, the debtor still had not filed any motions to use cash collateral.

### Conclusions of Law

11 U.S.C. § 1112(b)(1) provides that a debtor's case may be dismissed or converted for "cause". Cause is defined in 11 U.S.C. § 1112(b)(4) to include:

(A) substantial or continuing loss or diminution of the estate and the absence of reasonable likelihood of rehabilitation;

(B) gross mismanagement of the estate;

(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;

(F) unexcused failure to satisfy timely any filing or reporting requirement established by

    this title or by any rule applicable to a case under this chapter; and

    (H) failure to timely provide information or attend meetings reasonably requested by the United States trustee.

Courts are given broad discretion in determining what may constitute sufficient cause for the dismissal or conversion of a case.  <u>Toibb v. Radloff</u>, 501 U.S. 157, 165 (1991).

    Here, the debtor has failed to timely satisfy the filing requirements established by Title 11.  Section 521(a)(1)(B) of Title 11 requires the debtor to file a schedule of assets and liabilities.  The schedules and statements must be accurate.  "Bankruptcy is a give-and-take process, and, in order for debtors to receive the benefits and protections of the Bankruptcy Code, they must fulfill their role of complete disclosure to their creditors and the Court."  <u>In re Justice</u>, C/A No. 02-01524-jw, slip op. at 7 - 8 (Bankr. D.S.C. 8/29/2002).   "[T]he Court will not be placed in the position of ferreting the truth from inaccurate and misleading information supplied by debtors and their counsel."  <u>In re Boland</u>, C/A/ No. 01-03911-wb slip op. at 2 (Bankr. D.S.C. 5/24/2001).  In <u>Justice</u>, the Court found that the inaccurate information in the bankruptcy schedules and statements created a prejudicial delay to the creditors and, in part, constituted cause for conversion.   Similarly here, the debtor has been either unable or unwilling to fulfill his duty to provide complete and accurate information in his schedules and statements.  The debtor has been in bankruptcy for over four months yet he has failed to file accurate and complete schedules and statements.  As such, creditors and parties in interest are prejudiced and deprived of an opportunity to understand the debtor's financial picture.  Such conduct constitutes cause for conversion under 11 U.S.C. § 1112(b)(4)(F).

    It is unclear what income belongs to the estate and how the income is being used.  It is apparent that some estate funds are being collected and used by the debtor but it is not clear

whether the use of such funds is appropriate. Moreover, as the income the debtor derives is likely to be subject to the pledge or assignment of such rents, it appears that the creditor's interest in cash collateral has been jeopardized by the debtor's actions without Court authority or consent of the creditors. It appears that the debtor remaining in Chapter 11 is likely to result in a continuing loss and diminution of the estate and is cause as provided in 11 U.S.C. § 1112(b)(4)(A). Moreover, it does not appear that the debtor has a reasonable likelihood of reorganizing.

Cause for conversion under 11 U.S.C. § 1112(b)(4)(H) also exists as debtor's the late filed monthly operating reports are deficient. The UST and creditors and parties in interest have not been provided sufficient information regarding the debtor's activities for the four months he has enjoyed the protections of bankruptcy.

Cause for conversion under 11 U.S.C. § 1112(b)(4)(C) also exists as the debtor testified that he has no insurance on the real property but relies on the secured creditors maintaining force placed insurance. Such insurance generally protects the interest of lien-holders but not the interests of the debtor or the bankruptcy estate.

The UST has indicated that conversion of this case to chapter 7 appears to be in the best interest of creditors. Based on the record, the Court agrees with this recommendation.

The debtor has enjoyed the protections afforded to him under the Bankruptcy Code while failing to meet his duties. His conduct constitutes cause requiring the conversion of his case.

NOW THEREFORE IT IS ORDERED THAT this case should be, and hereby is, converted to chapter 7 pursuant to the provisions of 11 U.S.C. § 1112(b)(1) and (4)(A, C, F and H).

AND IT IS SO ORDERED.